## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JUL 15 2021 PM5:18
FILED-USDC-CT-NEW_HAVEN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:20CR58 (KAD) |
| | | |
| v. | : | 18 U.S.C. § 1962(d) (Racketeering Conspiracy) |
| TYIESE WARREN, a.k.a. "Loose Screw," and "KG LS" | : | 18 U.S.C. § 1951(a) (Hobbs Act Robbery) |
| AMIRE NEWSOME, a.k.a. "Mire," | : | 18 U.S.C. § 2119 (Carjacking) |
| ZIARE DEDRICK, a.k.a. "Zi" and "Hb Zi," | | 21 U.S.C. §§ 841 & 846 |
| JOSHUA GILBERT, a.k.a. "Lor Heavy," | : | (Narcotics Conspiracy) |
| JAUWAN EDWARDS, a.k.a. "Yaya," | | 18 U.S.C. §924(c)(1)(A) |
| JAHAZ LANGSTON, a.k.a. "Haz," | : | (Possession of a Firearm in |
| LORENZO CARTER, a.k.a "Zo," | | Furtherance of Drug Trafficking) |
| JAMAR TRAYLOR, a.k.a. "J Hop" | : | 18 U.S.C. § 924(c)(1)(A) |
| and "Rtn Hop," | | (i) & (ii) (Carry, Use and |
| | : | Brandishing of Firearm During a |
| MICHAEL LOCKHART, a.k.a "Mikey Rtn," and | | Crime of Violence) |
| ANTOINE SISTRUNK | : | 18 U.S.C. § 922(g) (Possession of Firearm by Convicted Felon) |
| | : | 18 U.S.C. § 2 (Aiding and Abetting) 18 U.S.C. § 3 (Accessory After the Fact) |

## THIRD SUPERSEDING INDICTMENT

The Grand Jury charges:

## COUNT ONE
## (RICO Conspiracy)

### The Enterprise

1.      At all times relevant to this Third Superseding Indictment, the defendants TYIESE

WARREN, a.k.a. "Loose Screw" and "KG LS"; AMIRE NEWSOME, a.k.a. "Mire"; ZIARE

DEDRICK, a.k.a. "Zi" and "Hb Zi"; JOSHUA GILBERT, a.k.a. "Lor Heavy"; JAUWAN

EDWARDS, a.k.a. "Yaya"; JAHAZ LANGSTON, a.k.a. "Haz"; LORENZO CARTER, a.k.a.

1

"Zo"; JAMAR TRAYLOR, a.k.a. "J Hop" and "Rtn Hop";

together with Shakale Brantley, a.k.a. "Charlie Wilson," "Kellz," "Man Man" and "Cdg Kellz"; Ta'Ron Pharr, a.k.a. "250"; and Jaylen Wilson, a.k.a. "Jay-Dot", charged separately, and others known and unknown to the Grand Jury, were members and associates of the Bridgeport street gang "O.N.E.," a criminal organization whose members and associates engaged in, among other activities, narcotics distribution, interstate transportation and receipt of stolen vehicles, firearms possession, and acts of violence, including murder, robberies and assault.

2. At all times relevant to this Third Superseding Indictment, O.N.E., which stands for "Original North End," and alternatively "Only North End" (hereinafter "O.N.E.", "the Enterprise", or "the Gang"), including its leaders, members and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. O.N.E. constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3. O.N.E. began as a local street gang in the Trumbull Gardens area of Bridgeport, Connecticut, but it currently has members and associates who are either incarcerated or living throughout Bridgeport and surrounding towns, including Shelton, Derby, and Ansonia, Connecticut. O.N.E. operates principally in and around the northern part of Bridgeport. O.N.E. members and associates often communicate through various forms of electronic communication, including Facebook messenger, SnapChat, phone calls, text messages, video chats, and music videos posted online. At times, members and associates use gang symbols and code words to communicate to avoid revealing their criminal activity.

4.      Members and associates of O.N.E. are expected to protect the name, reputation, and status of the Gang from rival gang members and other persons. To protect the Gang and enhance its reputation, O.N.E. members and associates are expected to use any means necessary to force respect from those who have shown disrespect, including committing acts of intimidation, threats of violence, and violence.

5.      O.N.E., during times relevant to this Third Superseding Indictment, was aligned with another street-level criminal organization from the central part of Bridgeport. Specifically, O.N.E. was aligned with members and associates of the "Greene Homes Boyz," which was also known as the "Hotz" or "GHB," a gang based in the Greene Homes Apartments, located within the Hollow neighborhood of Bridgeport. These two gangs were aligned against rival criminal organizations in Bridgeport, such as the East End Gang, the East Side Gang, the P.T. Barnum Gang, and 150, which is a geographic gang based on the West Side of Bridgeport. Members of O.N.E. would often join forces with individuals from the Hotz/GHB when engaging in acts of violence against the East End, the East Side, P.T. Barnum and 150 gangs.

6.      O.N.E. members had multiple criminal objectives, one of which was enrichment of the members and associates of the organization through the distribution of various controlled substances, including heroin, fentanyl, marijuana, Percocet pills, cocaine base/crack cocaine, among others. Members and associates of O.N.E sold controlled substances in and around Bridgeport, and exerted control over drug trafficking in the northern part of Bridgeport. O.N.E. members and associates shared customers and referred customers to each other, delivered narcotics for each other, and engaged in narcotics trafficking together. Often, drug related activity was

3

coordinated and facilitated by text messaging and Facebook messenger. O.N.E. members also advertised controlled substances over social media.

7.      Members of O.N.E. would use the proceeds of controlled substance sales and the proceeds of robberies and other criminal conduct to purchase firearms from both inside and outside Connecticut.

8.      Members ascended into positions of prominence within O.N.E, in part, based on their commission of shootings against rival gang members and other individuals who challenged the members of the Enterprise. A demonstrated willingness to use violence enhanced the reputation of O.N.E. members and associates, both within the Enterprise and in the surrounding community.

9.      Members and associates of O.N.E. committed and agreed, conspired, attempted, and threatened to commit acts of violence to protect fellow members and associates of the Enterprise and the reputations and memories of deceased members of the Enterprise. These acts of violence included shootings and murder intended to retaliate against members of rival gangs who encroached on the territory controlled by O.N.E. or who had shot or killed O.N.E. members or associates or disrespected members and associates of the Enterprise, or otherwise to promote the standing and reputation of O.N.E. amongst rival gangs. Certain O.N.E. members and associates would create and upload music videos to display O.N.E's arsenal of firearms, to take credit for acts of violence against rival gang members, and to enhance their own standing and reputation in the North End of Bridgeport and beyond.

<u>Purposes of the O.N.E. Enterprise</u>

10.     The purposes of the Enterprise included the following:

4

a.      Enriching the members and associates of the Enterprise through, among other things, the distribution and sale of controlled substances, robberies, and other thefts.

b.      Preserving and protecting the power, territory, reputation, and profits of the Enterprise through intimidation, violence, threats of violence, assaults, and acts involving murder.

c.      Promoting and enhancing the Enterprise and the activities and authority of its members and associates.

d.      Keeping victims and potential victims, witnesses and rival gang members in fear of the Enterprise and in fear of its members and associates through intimidation, threats of violence, and acts of violence.

e.      Providing assistance to members and associates of the Enterprise who committed crimes for and on behalf of the Enterprise.

f.      Providing financial support and information to members and associates of the Enterprise, including those incarcerated for committing acts of violence, robbery, distribution of controlled substances, firearms offenses, and other offenses.

g.      Using criminal proceeds, including proceeds from the sale of controlled substances, robberies, other thefts, and from other crimes, to purchase firearms from inside or outside the State of Connecticut.

h.      Protecting the Enterprise and its members and associates from detection and prosecution by law enforcement authorities, through acts of intimidation and violence against potential witnesses, including members and associates of O.N.E., to crimes committed by members of the Enterprise.

i.    Hindering, obstructing, and preventing law enforcement officers from identifying, apprehending, and successfully prosecuting and punishing members and associates of the Enterprise.

Means and Methods of the Enterprise

11.    Among the means and methods employed by the members and associates in conducting and participating in the conduct of the affairs of the Enterprise were the following:

a.    Members and associates of the Enterprise committed, conspired, attempted, and threatened to commit acts of violence, including assaults and acts involving murder against rival gang members and other individuals seen as adverse to the Enterprise.

b.    Members and associates of the Enterprise facilitated, promoted and celebrated the criminal conduct of the Enterprise, namely narcotics distribution, violent acts, and the use and possession of firearms, on social media websites such as Facebook and SnapChat.

c.    Members and associates of the Enterprise promoted and celebrated the criminal conduct of the Enterprise, namely acts of violence against rival gang members, in rap music uploaded to websites such as SoundCloud and YouTube.

d.    Members and associates of the Enterprise obtained, possessed, shared, used and disposed of firearms from inside and outside the State of Connecticut.

e.    Members and associates of the Enterprise stole, transported, received, possessed, shared, used, and disposed of stolen vehicles from inside and outside the State of Connecticut.

f.    Members and associates of the Enterprise distributed, and aided and abetted the distribution of, controlled substances.

g. Members and associates of the Enterprise committed and aided and abetted the commission of robberies and other thefts.

h. Members and associates of the Enterprise committed acts of intimidation and made threats as a means of deterring and/or punishing any potential witnesses to their crimes and in connection with protecting the Enterprise and its members and associates from detection and prosecution by law enforcement authorities.

## The Racketeering Conspiracy

12. From approximately January 2012 to the present, in the District of Connecticut and elsewhere, the defendants TYIESE WARREN, a.k.a. "Loose Screw" and "KG LS"; AMIRE NEWSOME, a.k.a. "Mire"; ZIARE DEDRICK, a.k.a. "Zi" and "Hb Zi"; JOSHUA GILBERT, a.k.a. "Lor Heavy"; JAUWAN EDWARDS, a.k.a. "Yaya"; JAHAZ LANGSTON, a.k.a. "Haz"; LORENZO CARTER, a.k.a. "Zo"; JAMAR TRAYLOR, a.k.a. "J Hop" and "Rtn Hop";

together with others known and unknown to the Grand Jury, being persons employed by and associated with the Enterprise described in the preceding paragraphs, namely O.N.E., knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering law of the United States, namely Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of O.N.E., which was engaged in, and the activities of which affected, interstate and foreign commerce, through a pattern of racketeering activity consisting of:

   a. Multiple acts involving murder chargeable under the following provisions of state law: Connecticut General Statutes § 53a-54a (murder), § 53a-48 (conspiracy), § 53a-49 (attempt), and §53a-8 (aiding and abetting).

7

b.   Multiple acts involving robbery chargeable under the following provisions of state law: Connecticut General Statutes § 53a-134 (robbery first degree), § 53a-135 (robbery second degree), § 53a-136 (robbery third degree), § 53a-136a (robbery involving occupied motor vehicle), § 53a-48 (conspiracy), § 53a-49 (attempt), and §53a-8 (aiding and abetting).

c.   Multiple acts involving arson, chargeable under the following provisions of state law: Connecticut General Statutes § 53a-112 (arson second degree), § 53a-113 (arson third degree), § 53a-48 (conspiracy), § 53a-49 (attempt), and §53a-8 (aiding and abetting).

d.   Multiple offenses involving the violation of Title 18, United States Code, Sections 1951 and 2 (relating to interference with commerce by robbery, aiding and abetting).

e.   Multiple offenses involving the violation of Title 18, United States Code, Sections 2312, 2313 and 2 (relating to interstate transportation, receipt, possession, and disposal of stolen vehicles, aiding and abetting).

f.   Multiple offenses involving the violation of Title 21, United States Code, Sections 841 and 846 (relating to the distribution of controlled substances).

g.   Multiple offenses involving the violation of Title 18, United States Code, Sections 1512 and 1513 (relating to tampering with or retaliating against a witness, victim, or informant).

13.     It was part of the conspiracy that the defendants TYIESE WARREN, a.k.a. "Loose Screw" and "KG LS"; AMIRE NEWSOME, a.k.a. "Mire"; ZIARE DEDRICK, a.k.a. "Zi" and

"Hb Zi"; JOSHUA GILBERT, a.k.a. "Lor Heavy"; JAUWAN EDWARDS, a.k.a. "Yaya"; JAHAZ LANGSTON, a.k.a. "Haz"; LORENZO CARTER, a.k.a. "Zo"; JAMAR TRAYLOR, a.k.a. "J Hop" and "Rtn Hop"; and                                    each agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

### Overt Acts

14.    In furtherance of the conspiracy and to achieve the object thereof, the following overt acts, among others, were committed in the District of Connecticut and elsewhere:

a.    From at least 2012 to the present, in the District of Connecticut, TYIESE WARREN, a.k.a. "Loose Screw" and "KG LS"; AMIRE NEWSOME, a.k.a. "Mire"; ZIARE DEDRICK, a.k.a. "Zi" and "Hb Zi"; JOSHUA GILBERT, a.k.a. "Lor Heavy"; JAUWAN EDWARDS, a.k.a. "Yaya"; JAMAR TRAYLOR, a.k.a. "J Hop" and "Rtn Hop";

and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States. The controlled substances involved in the offense included heroin, fentanyl, Percocet pills, marijuana, cocaine base/crack cocaine, among other controlled substances.

b.    On or about January 10, 2018, WARREN and GILBERT transported a stolen 2013 Ford Fusion, bearing Vehicle Identification Number 3FA6POH7XDR130306, and with stolen Connecticut license tag AF40510, across state lines from the State of Connecticut to Westchester County, New York.

c.    On or about August 8, 2018, Shakale Brantley, Jaylen Wilson, Ta'Ron Pharr, and other O.N.E. members and associates stole a white Jeep Grand Cherokee, bearing Vehicle

9

Identification Number 1C4RJFAG1FC875615, from Newburgh, New York and transported it to Bridgeport, Connecticut.

d.     From on or about August 9, 2018 to on or about August 13, 2018, in the District of Connecticut and elsewhere, Brantley, Wilson, Pharr, TRAYLOR, and others known and unknown to the Grand Jury, knowingly agreed to murder members and associates of a rival gang known as the East End gang.

e.     On or about August 13, 2018, in the District of Connecticut, LORENZO CARTER, a.k.a. "Zo";          and Pharr used the stolen white Jeep Grand Cherokee to drive to Stratford Avenue in Bridgeport, where they shot and killed Len Smith, believing him to be a rival East End gang member.

f.     On or about August 13, 2018, in the District of Connecticut          CARTER, Brantley, Pharr and others including but not limited to Antoine Sistrunk and Henry Floy, charged separately, set fire to the white Jeep Grand Cherokee identified above, and aided and abetted the same, with the intent to conceal another criminal act, namely, the murder of Len Smith.

g.     On or about October 22, 2018, in the District of Connecticut, TRAYLOR, Brantley, and others known and unknown to the Grand Jury, robbed, and aided and abetted the robbery of marijuana from Victim #1, whose identity is known to the Grand Jury.

h.     On or about November 5, 2018, in the District of Connecticut, Brantley and others known and unknown to the Grand Jury, robbed, and aided and abetted the robbery of marijuana from Victim #1.

i.     From on or about November 15, 2019 to on or about December 8, 2019, in the District of Connecticut, WARREN, NEWSOME, DEDRICK, EDWARDS, and others known and

10

unknown to the Grand Jury, received and possessed a stolen 2017 Lexus R35, bearing Vehicle Identification Number 2T2BZMCA6HC069699, knowing it had been stolen.

j.    On or about November 17, 2019, in the District of Connecticut and elsewhere, DEDRICK, and others unknown to the Grand Jury, agreed to steal and transport, did in fact steal and transport, and aided and abetted the theft and transport of, from the State of New York to the State of Connecticut, a 2017 Nissan Sentra, bearing Vehicle Identification Number 3N1AB7AP5HY317361.

k.    On or about December 5, 2019, in the District of Connecticut, WARREN and NEWSOME were present in a stolen Lexus, bearing Vehicle Identification Number 2T2BZMCA6HC069699, which appeared on video surveillance at the time shots were fired in the P.T. Barnum Housing Complex on that day.

l.    On or about December 5, 2019, in the District of Connecticut, DEDRICK was present in the P.T. Barnum Housing Complex with a gun.

m.    On or about December 6, 2019, the day Victim #2, whose identity is known to the Grand Jury, was shot at with a gun that discharged .45 caliber shell casings matched to a gun used to shoot and kill Ty'Quess Moore on December 8, 2019, and in the hours before the shooting of Victim #2, WARREN, DEDRICK, and others known and unknown to the Grand Jury, sent messages to each other. WARREN texted DEDRICK: "We bouta go do what Lor was talkin yesterday." DEDRICK asked "When?" and WARREN responded, "Right now lol." Later WARREN texted DEDRICK that "we bouta grab Blickkk rq," referring to a member of the Greene Home Boyz gang.

11

n.      On or about December 8, 2019, in the District of Connecticut, prior to shots being fired in the P.T. Barnum Housing Complex and prior to the murder of Ty'Quess Moore on that day, WARREN, DEDRICK, and GILBERT sent messages to each other. DEDRICK texted, "Damn Arv got popped," and WARREN responded, "Bouta step on Niggas necks Fr." GILBERT texted, "Showtime," and WARREN stated, "I need my shit from Blick Crib. Lor I got 38 for you."

o.      On or about December 8, 2019, in the District of Connecticut, DEDRICK and others were in the stolen Lexus, bearing Vehicle Identification Number 2T2BZMCA6HC069699, in the P.T. Barnum Housing Complex, where he discharged a .40 caliber gun before the murder of Ty'Quess Moore.

p.      On or about December 8, 2019, in the District of Connecticut, WARREN, DEDRICK, GILBERT, and others unknown to the Grand Jury shot and killed, and aided and abetted the killing of, Ty'Quess Moore, a.k.a. "Breezo," a member and associate of the East End/P.T. Barnum gang alliance.

q.      On or about December 20, 2019, NEWSOME and WARREN transported from the State of Connecticut to Bedford, New York a stolen 2016 Kia Soul, bearing Vehicle Identification Number KNDJN2A28G7289373, knowing that it had been stolen.

r.      On or about January 27, 2020, in the District of Connecticut, WARREN and others known to the Grand Jury, agreed to shoot members and associates of the rival East End gang.

s.      On or about January 27, 2020, in the District of Connecticut, WARREN and others known to the Grand Jury, did shoot and attempt to kill, and did aid and abet the attempted killing, of members and associates of the rival East End gang.

t. On or about March 25, 2020, in the District of Connecticut, WARREN and NEWSOME, while carrying and brandishing firearms, robbed, and aided and abetted the robbery of, the Citgo 6M Service Station and Quik Mart, located at 2000 Barnum Avenue, Stratford, Connecticut.

u. On or about March 25, 2020, in the District of Connecticut, WARREN and NEWSOME took by force and intimidation, and aided and abetted the forceful taking of, a motor vehicle, that is, a Toyota Corolla (CT Reg. AM84952), from the person and in the presence of Victim #3, whose identity is known to the Grand Jury.

v. From on or about March 28, 2020, to on or about April 8, 2020, in the District of Connecticut, Brantley and others known and unknown to the Grand Jury, knowingly threatened and attempted to threaten Victim #1, and did persuade another person to act against Victim #1 with the intent to prevent Victim #1 from providing information and testimony to a law enforcement officer and judge of the United States about the robberies committed against him.

w. On or about March 7, 2021, in the District of Connecticut, JAHAZ LANGSTON, a.k.a. "Haz", and others known and unknown to the Grand Jury knowingly agreed to kill and attempted to kill Victim #2, who is associated with members of the P.T. Barnum/East End gang alliance.

## Special Sentencing Factors

15. On or about August 13, 2018, in the District of Connecticut, and LORENZO CARTER, aided and abetted by each other and by others known to the Grand Jury, did commit murder, that is, with the intent to cause the death of another person, they did in fact cause the death of Len Smith, in violation of Conn. Gen. Stat. §§ 53a-54a and 53a-8.

13

16. On or about December 8, 2019, in the District of Connecticut, TYIESE WARREN, JOSHUA GILBERT, and ZIARE DEDRICK, aided and abetted by each other, did commit murder, that is, with the intent to cause the death of another person, they did in fact cause the death of Ty'Quess Moore, a.k.a. "Breezo," in violation of Conn. Gen. Stat. §§ 53a-54a and 53a-8.

All in violation of Title 18, United States Code, Sections 1962(d) and 1963(a).

## COUNT TWO
(Accessory After the Fact to VICAR Murder)

17. The allegations set forth in Paragraphs 1 through 11 of this Third Superseding Indictment are hereby realleged and incorporated as though set forth fully herein.

18. On or about August 13, 2018, in the District of Connecticut, the defendant ANTOINE SISTRUNK, along with Henry Floy, a.k.a. "Mills," and Shakale Brantley, a.k.a. "Charlie Wilson," "Kellz," "Man Man," and "Cdg Kellz," charged separately, and with others known and unknown to the Grand Jury, knowing that an offense against the United States had been committed, that is, the above-described murder of Len Smith, received, relieved, comforted, and assisted defendants and LORENZO CARTER, and Ta'Ron Pharr, charged separately, all O.N.E. members, in order to hinder and prevent the apprehension, trial, and punishment of said defendants, to wit, by destroying and assisting in the destruction of the vehicle and other evidence used to commit and relating to the above-described murder.

All in violation of Title 18, United States Code, Sections 3 and 2.

14

## COUNT THREE
(Interference with Commerce by Robbery)

19.    On or about October 22, 2018, the exact date being unknown to the Grand Jury, in the District of Connecticut, the defendant JAMAR TRAYLOR, a.k.a. "J Hop" and "Rtn Hop," along with Shakale Brantley, charged separately, and with others known and unknown to the Grand Jury, did unlawfully obstruct, delay, and affect, and did attempt to unlawfully obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951, in that TRAYLOR did unlawfully take and obtain, and cause to be taken and obtained, and aided and abetted the taking and obtaining of personal property consisting of marijuana from and in the presence of Victim #1, against his will, by means of actual and threatened force, violence, and fear of injury to his person.

In violation of Title 18, United States Code, Sections 1951(a) and 2.

## COUNT FOUR
(Conspiracy to Interfere with Commerce by Robbery)

20.    From on or about October 22, 2018, to on or about November 5, 2018, the exact dates being unknown to the Grand Jury, in the District of Connecticut, the defendant JAMAR TRAYLOR, a.k.a. "J Hop" and "Rtn Hop," along with others known and unknown to the Grand Jury, did conspire to unlawfully obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951, in that TRAYLOR agreed with others to take personal property consisting of marijuana from and in

15

the presence of Victim #1, against his will, by means of actual and threatened force, violence, and fear of injury to his person.

In violation of Title 18, United States Code, Section 1951(a).

## COUNT FIVE
### (Interference with Commerce by Robbery)

21.     At all times relevant to this Third Superseding Indictment, Citgo 6M Service Station and Quik Mart (referred to as the "Commercial Victim" herein), located at 2000 Barnum Avenue, Stratford, Connecticut, was engaged in the business of selling fuel, Lotto tickets, and other goods and services in interstate commerce, and is in an industry which affects interstate commerce.

22.     On or about March 25, 2020, in the District of Connecticut, the defendant TYIESE WARREN, a.k.a. "Loose Screw" and "KG LS," along with a member of O.N.E. whose identity is known to the Grand Jury and who was at that time a juvenile, did unlawfully obstruct, delay, and affect, and did attempt to unlawfully obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951, and aided and abetted in the same, in that WARREN did unlawfully take and obtain, and cause to be taken and obtained, and aided and abetted another individual to take and obtain, United States currency and a cellular telephone from and in the presence of an employee and agent of the Commercial Victim, against his will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to his person,

All in violation of Title 18, United States Code, Sections 1951 and 2.

16

<u>COUNT SIX</u>
(Carry, Use and Brandishing of a Firearm During and in Relation to a Crime of Violence)

23.     On or about March 25, 2020, in the District of Connecticut, the defendant, TYIESE

WARREN, a.k.a. "Loose Screw" and "KG LS," along with a member of O.N.E. whose identity is

known to the Grand Jury and who was at that time a juvenile, did knowingly brandish, carry and

use a firearm, and aided and abetted in the same, during and in relation to a crime of violence for

which he may be prosecuted in a court of the United States, that is, Interference with Commerce

by Robbery as charged in Count Five of this Third Superseding Indictment.

In violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and (ii) and 2.

<u>COUNT SEVEN</u>
(Carjacking)

24.     On or about March 25, 2020, in the District of Connecticut, the defendant TYIESE

WARREN, a.k.a. "Loose Screw" and "KG LS," along with a member of O.N.E. whose identity is

known to the Grand Jury and who was at that time a juvenile, took, and aided and abetted the

taking of, a motor vehicle, that is, a Toyota Corolla (CT Reg. AM84952), that had been transported,

shipped, and received in interstate commerce, from and in the presence of Victim #3 by force,

violence, and intimidation, with the intent to cause death and serious bodily harm.

In violation of Title 18, United States Code, Sections 2119 and 2.

<u>COUNT EIGHT</u>
(Conspiracy to Possess with Intent to Distribute Controlled Substances)

25.     From in or about January 2021 and continuing until on or about June 1, 2021, the

exact dates being unknown to the Grand Jury, in the District of Connecticut, the defendants

JAMAR TRAYLOR, a.k.a. "J Hop" and "Rtn Hop," and MICHAEL LOCKHART, a.k.a "Mikey

Rtn," as well as others unknown to the Grand Jury, knowingly and intentionally conspired together and with one another to possess with the intent to distribute heroin and marijuana, Schedule I controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) and (b)(1)(D).

All in violation of Title 21, United States Code, Section 846.

## COUNT NINE
(Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

26.     From in or about January 2021 and continuing until on or about June 1, 2021, in the District of Connecticut, the defendants JAMAR TRAYLOR, a.k.a. "J Hop" and "Rtn Hop," and MICHAEL LOCKHART, a.k.a "Mikey Rtn," knowingly possessed a firearm, and aided and abetted the possession of a firearm, that is, (1) a Glock .40 caliber handgun, Model 23, Serial No. KZD028, with attachments and ammunition; (2) a black and purple Glock, semi-automatic, .40 caliber handgun, Serial No. BMP6864, with attachments and ammunition; (3) a black and purple Glock, Model 19, semi-automatic 9mm handgun, Serial No. BNCD043, with attachments and ammunition; (4) a black and brown Glock, semi-automatic, 9mm handgun, Model 19, Serial No. BLCH303, with attachment; and (5) a black Glock, semi-automatic, .45 caliber handgun, Model 30S, Serial No. BSMK312, in furtherance of a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, the crime charged in Count Eight of this Third Superseding Indictment.

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

## COUNT TEN
(Possession of a Firearm by a Convicted Felon)

27.     On or about June 1, 2021, in the District of Connecticut, defendant JAMAR

TRAYLOR, a.k.a. "J Hop" and "Rtn Hop," having been, and knowing he had been, convicted in the Superior Court of Connecticut of a crime punishable by imprisonment for a term exceeding one year, namely: Possession of a Firearm Without a Permit, in violation of Conn. Gen. Stat. § 29-35(a), on or about June 24, 2019, did knowingly possess, and aided and abetted the possession of, in and affecting commerce, a firearm to wit: (1) a Glock .40 caliber handgun, Model 23, Serial No. KZD028; (2) a black and purple Glock, semi-automatic, .40 caliber handgun, Serial No. BMP6864; (3) a black and purple Glock, Model 19, semi-automatic 9mm handgun, Serial No. BNCD043; (4) a black and brown Glock, semi-automatic, 9mm handgun, Model 19, Serial No. BLCH303; and (5) a black Glock, semi-automatic, .45 caliber handgun, Model 30S, Serial No. BSMK312, each of which had been shipped and transported in interstate and foreign commerce.

In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 2.

<u>COUNT ELEVEN</u>
(Possession of a Firearm by a Convicted Felon)

28.     On or about June 1, 2021, in the District of Connecticut, the defendant MICHAEL LOCKHART, a.k.a "Mikey Rtn," having been, and knowing he had been, convicted in the Superior Court of Connecticut of a crime punishable by imprisonment for a term exceeding one year, namely: (1) Possession of a Firearm Without a Permit, in violation of Conn. Gen. Stat. § 29-35(a), on or about March 5, 2019; (2) Burglary 3rd Degree, in violation of Conn. Gen. Stat. § 53a-103, on or about March 5, 2019; and (3) Larceny 1st Degree of a Motor Vehicle, in violation of Conn. Gen. Stat. § 53a-122(a)(3), on or about March 5, 2019, did knowingly possess, and aided and abetted the possession of, in and affecting commerce, a firearm, to wit: (1) a Glock .40 caliber handgun, Model 23, Serial No. KZD028; (2) a black and purple Glock, semi-automatic, .40 caliber

handgun, Serial No. BMP6864; (3) a black and purple Glock, Model 19, semi-automatic 9mm handgun, Serial No. BNCD043; (4) a black and brown Glock, semi-automatic, 9mm handgun, Model 19, Serial No. BLCH303; and (5) a black Glock, semi-automatic, .45 caliber handgun, Model 30S, Serial No. BSMK312, each of which had been shipped and transported in interstate and foreign commerce.

In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 2.


### FORFEITURE ALLEGATION
(Robberies)

29.     Upon conviction of one or more of the offenses alleged in Counts Five and Seven of this Third Superseding Indictment, defendant TYIESE WARREN shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1951 and 2119, and a sum of money equal to the total amount of proceeds obtained as a result of the offenses.

30.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

All in accordance with 18 U.S.C. § 981(a)(1), as incorporated by 28 U.S.C. § 2461(c), 21 U.S.C. § 853, and Rule 32.2(a), Federal Rules of Criminal Procedure.

## FORFEITURE ALLEGATION
(Controlled Substance Offense)

31.     Upon conviction of the controlled substance offense alleged in Count Eight of this Third Superseding Indictment, the defendants JAMAR TRAYLOR and MICHAEL LOCKHART shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, all right, title, and interest in any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the violation of Title 21, United States Code, Section 841, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, that violation.

32.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property that cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

All in accordance with Title 21, United States Code, Section 853 and Rule 32.2(a), Federal Rules of Criminal Procedure.

FORFEITURE ALLEGATION
(Firearms Offenses)

33.     Upon conviction of the offense alleged in Counts Six, Nine, Ten, and Eleven of this Third Superseding Indictment, the defendants TYIESE WARREN, JAMAR TRAYLOR, and MICHAEL LOCKHART shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c), the firearms involved in the commission of the offenses including, but not limited to: (1) a Glock .40 caliber handgun, Model 23, Serial No. KZD028, with attachments and ammunition; (2) a black and purple Glock, semi-automatic, .40 caliber handgun, Serial No. BMP6864, with attachments and ammunition; (3) a black and purple Glock, Model 19, semi-automatic 9mm handgun, Serial No. BNCD043, with attachments and ammunition; (4) a black and brown Glock, semi-automatic, 9mm handgun, Model 19, Serial No. BLCH303, with attachment; and (5) a black Glock, semi-automatic, .45 caliber handgun, Model 30S, Serial No. BSMK312, together with all accessories, attachments, and ammunition.

22

All in accordance with Title 18, United States Code, Section 924, and Rule 32.2(a) of the

Federal Rules of Criminal Procedure.

A TRUE BILL

FOREPERSON

UNITED STATES OF AMERICA

LEONARD C BOYLE
ACTING UNITED STATES ATTORNEY

KAREN L. PECK
ASSISTANT UNITED STATES ATTORNEY

RAHUL KALE
ASSISTANT UNITED STATES ATTORNEY

JOCELYN C. KAOUTZANIS
ASSISTANT UNITED STATES ATTORNEY

PETER D. MARKLE
ASSISTANT UNITED STATES ATTORNEY